Good morning, Mr. Ramos. Good morning, Your Honors. You may proceed when you're ready. Good morning, Your Honors. May it please the Court, Edward Ramos for the plaintiff Donglan Xia. I'd like to reserve three minutes for rebuttal. This case should be reversed and remanded back to the Board of Immigration Appeals for really two central reasons. And the first reason is that the Board was wrong to impose a categorical compelling ties test on the habitual residence definition. Most fundamentally, the compelling ties test has no discernible connection to the text of the Hague Adoption Convention. And like statutes, courts interpret treaty language based principally on the text of the treaty language. And neither the government nor the agency has ever offered an explanation that tethers that compelling ties standard to the phrase habitually resident that appears in the Hague Adoption Convention. And I think this point was really illustrated by the Supreme Court's decision in Manaski v. Tagliari that interpreted the identical phrase in the context of a very closely related treaty, which is the Hague Adoption Convention. And that treaty was developed by the exact same international body that developed the adoption treaty that's at issue in this case. And that treaty uses the identical phrase, habitually resident. And the Supreme Court wanted cert in that case to explain what the phrase habitually resident means under that treaty. And I think its reasoning is quite instructive. The Supreme Court first looked to the plain language of the words habitually and resident. It looked to the word habitual, meaning as a matter of habit, something that's more than merely transitory. And then it looked to the word resident, which means residence, which means where the child resides. Then, Your Honor? Well, I was going to ask you, there's a preamble to the portion of this very truncated order on the part of the BIA that says, considering the specific facts and circumstances that led to his enrollment in school and these activities, I don't, what bearing does that have on the question of compelling ties? Well, I think it illustrates, Your Honor, that the board I mean, as a matter of law, what are they talking about here? I wish I could answer that question for you, Your Honor. I mean, that's one of the reasons, that's the second reason why we think the case should be examined.  Which is that the board's explanation here was woefully deficient. I mean, in this two-page decision, there's really only one paragraph that discusses the facts of this specific case. And that one paragraph, which appears, it's the third paragraph on the second page. The first two sentences of that paragraph acknowledge the strength of Tim's ties to the United States. The first sentence talks about how he arrived in August of 2011 and was adopted in September 2012, which is over one year after his entry. The second sentence acknowledges, albeit in a pretty perfunctory manner, the strength of his ties to the U.S., the fact that he had attended school in this country, participated in religious and other extracurricular activities, and resided with the plaintiff. And then the third sentence just refers to the, quote, specific facts and circumstances that led to Tim's enrollment in school and these activities. But there's no explication of what facts and what circumstances the board. It seems to me that sort of conflates two issues, the intent requirement and the residence requirement. That's exactly right. Right? I think that's exactly right. It doesn't make a lot, it doesn't parse. I couldn't agree with you more, though. So let me ask you this question, though. This last paragraph, the see also? Yes. Now, why couldn't that be a freestanding separate holding that under this regulation, Tim is not entitled to relief here, or rather the petitioner is not? Yeah, I think there's a couple of points on the regulation. The first is that now we're in a post-Chevron world. The meaning, you know, both we and the government have relied on that regulation, and we have conflicting interpretations of the regulation. But at the end of the day, now in a local bright era, this court is the entity without any deference to the regulation there, interpreting habitual residence, decides what habitual residence means. And the fact that this regulation refers to adoption and immigration is no longer really dispositive of what habitual residence means. And to be clear, under the Adoption Convention, there are two ways that the special provisions of the Adoption Convention are triggered. One is if the child is moved from one country to another for the purposes of adoption, and the second is if the child and the parent habitually reside in different places at the time of the adoption. So the government has offered conflicting interpretations of what this very, very truncated see-also site means, and just basically quoting the language of the regulation. But neither of those can really provide a basis for affirmance. Under one interpretation that the government offers, the board was sort of making a finding that Tim was moved from China to the United States in 2011 for the purpose of adoption. Well, or immigration.  It says both. So that's the second interpretation. Well, I mean, that's not an interpretation. It's a word in the regulation. It's true that it's a word. I mean, we have to interpret it. It's true that they're involving, I think, in conjunction with, I would say, his immigration to the United States. Why wouldn't that be a freestanding holding that whatever the first part means, and I don't really know, this second part is nevertheless a separate holding that might, in fact, support an affirmance. Right. A couple of responses, Your Honor. I think one is that, at a minimum, the board should have provided more of an explanation. I mean, we're kind of reading between the lines as to what it meant by that see-also site. And I think you're exactly right, Your Honor, that they seem to be conflating the intent requirement with the separate provision. So one of your suggestions, I guess, is maybe a remand for explanation. I think the fact that the parties have conflicting interpretations of that regulation is a very strong basis to remand, we believe. Beyond that, it's kind of unclear. I mean, the whole thing is, you know, you have to be able to determine what the board was actually saying before you decide whether it said what's correct. It's a matter of law. I just don't know. I agree with that, Your Honor. I think it is confusing, and I see I'm into my rebuttal time. But I will just note that the board raised the regulation sua sponte. And so the parties never had an opportunity to brief the meaning of the regulation before the board. And, in fact, the government never filed a brief before the board. So I do think that, to the extent the court believes that the regulation may be dispositive, the best course would be to remand and allow the parties to hash this out before the agency first. I'd like to reserve the remainder of my time. Thank you, counsel.  Good morning, counsel. You may proceed when you're ready. Good morning, Mr. Your Honor. Ayesha Iqbal on behalf of the government. The Hague Adoption Convention aims to protect children and ensure that inter-country adoptions are done in their best interests. And the BIA properly decided that Ms. Zhao was subject to the convention when adopting her nephew from China. There are three reasons that support affirmance of the lower courts and the BIA's decisions. First, the BIA rightfully applied the USCIS Habitual Residence Guidance, which tracks the purpose and goals of the Hague Adoption Convention. Second, the BIA's decision finding Tim a habitual resident of China was supported by the record and withstands APA review. And third, the Habitual Residence Guidance cites to and relies on federal regulations implementing the Inter-Country Adoption Act and the Hague Adoption Convention, and thus it provides persuasive value in this determination. So this case asks us to consider whether Tim was a habitual resident of China or the United States prior to his adoption. And USCIS's Habitual Residence Memo answers that precise question. There's generally an expectation between partner countries that inter-country adoptions follow the established Hague adoption process. And here, facts show that there was an intent to circumvent that process. 8 CFR 204.303b states that a child will generally be deemed habitually resident in his country of citizenship. But where that child resides outside of his country of citizenship, the central authority of that country can determine that the child's status in that other country is sufficiently stable, such that he's a habitual resident of that country. The facts in this case show that Tim arrived in the United States in August of 2011 on a temporary visitor's visa. He was immediately enrolled in school in violation of that visa. And in the background, Tim's parents were pursuing their own immigration plans to the U.S. Approximately a year later, in September of 2012, Tim was adopted by Mijia. And within six months, Tim's parents arrived in the United States. And there are statements in the record that state that part of the reason that Mijia decided to extend Tim's visa and adopt him was to avoid disrupting his schooling. And having him go back to China and immigrate with his parents would be contrary to that goal, to allow him to acclimate in the United States. So when Mijia filed a petition with USCIS on behalf of Tim, the regulation does allow USCIS to make the determination as a competent authority where China did not step in as a central authority to respond to the question of Tim's habitual residence when China was notified about the adoption. And the USCIS guidance provides a formula for USCIS to make that determination. And the BIA states in its decision that it finds USCIS' guidance to be persuasive in making this determination. The USCIS guidance asks us to look at three different factors in the totality of the evidence and on a case-by-case basis. The first factor is the intent element, whether the child was brought to the United States for the purposes of adoption. The second is whether the child established compelling ties for a substantial period of time. The actual residence requirement. And the third is whether the central authority of the child's country was notified of the adoption. And so while we do have Supreme Court authority, Manaski v. Taglieri, on the matter of habitual residence for the purposes of the Hague Abduction Convention, and while that authority might be instructive, it is not controlling in a Hague adoption case. And moreover, Manaski asks us to look at where a child is at home, and it cautions against any categorical requirement for determining a child's habitual residence. The categorical requirement in Manaski was an agreement between the parents on where the child's residence should be. There is no such categorical requirement in this case. And USCIS's guidance asks us to look at where the child developed compelling ties for a substantial period of time. And so any difference between the Manaski's at-home formula and USCIS's compelling ties for a substantial period of time formula is merely a matter of semantics. And as the lower court found, any failure to apply Manaski was at most harmless error. But the lower court also made that finding because under either standard, Tim would not be considered a habitual resident of the United States prior to his adoption. And so Your Honor, turning to the actual facts of this case, the BIA is not required to cite to every fact that it relied on in making its conclusion. Under the APA, the BIA's decision must merely be discernible. And so the BIA does mention the facts and circumstances that led to Tim enrolling in school and enrolling in extracurricular activities. And then... What does that have to do with whether he was a resident? Well, Your Honor, these are the ties... Maybe it refers to the intent requirement, but how does it go to your issue? Well, Your Honor, the intent asks us to consider whether the child was brought to the United States for the purposes of the adoption. The second element, the actual resident, asks us to consider the ties that the child developed in the United States prior to the adoption. And so the BIA found that the ties that Tim developed here, the extracurricular activities and the enrollment in school, those ties could not be separated from the fact of Tim's plans to immigrate to the United States. And Tim's plans to immigrate to the United States were furthered by his adoption by Ms. Jha. And so the facts together show a scheme here. And the BIA does go on, when it mentions these facts and circumstances, it does go on to cite language from 8 CFR 204.303B. And that regulation states that a child will not be considered habitually resident in a country where he travels for the purposes or in conjunction with his adoption and or immigration. Yes, Your Honor. Is that a second reason for the affirmance? Or is this an explanation of the first part? Help me with the structure of this order. Is this a second? And by the way, here's another reason why we're denying this petition. Or is it somehow connected to the first part? Yes, it is the BIA's decision, Your Honor. Yes, that's what's here, right?  Yes. The BIA order. Yes. The regulation you were just talking about, okay? Yes. Is that a separate and distinct reason that the BIA was giving for its decision? So the BIA cites that regulation to support and further its analysis. So it's not separate and distinct? No, Your Honor. That citation... I don't see how it furthers the analysis. So the BIA mentioning the facts and circumstances that led to Tim's adoption, the BIA's mentioning of that and then the BIA's citation to that regulation in combination make the point that Tim was brought to the United States for the purposes of adoption and his immigration... Excuse me, brought to the United States for the purposes of immigration and his adoption cannot be separated from that immigration. Those facts... Again, so you're saying it went to the intent requirement, right? It was a different intent requirement though, isn't it? Yes. So the intent requirement asks us to consider whether the child was brought to the United States for the purposes of the adoption. The second element asks us to consider whether the child developed compelling ties for a substantial period of time. This is kind of a maze for me. You'll have to forgive me. And this is a question that's not really, I think, addressed in the briefs but maybe entirely outside the case. But I'm curious. There's a regulation, HCFR sections 204.2D2, etc., which provides that this kind of petition can't be granted unless the child was not habitually resident outside the United States immediately before his arrival in the United States. Now, I mean, wasn't Tim habitually resident in China immediately before his arrival? And if so, why doesn't this regulation cover this case? Yes, Your Honor. Tim was a habitual resident of China right before his adoption. And the regulation does state that a child will generally be deemed habitually resident in his country of citizenship. And so that is the first point that we should consider. Is this regulation cited? The one I'm talking about? 204.2D2.7DF? It's not in your case, is it? I don't believe. I'm not positive that the B.A. All right, that's fine. I don't want to take that away from you. No, I'm sorry, Your Honor. The B.A. does cite that regulation. And it says it may preclude the petitioner from filing the I-130 because China is a party to the Hague Adoption Convention. But the B.A. When was that cited? In the third paragraph, in the middle of the third paragraph.  And so, Your Honor, but the B.A. does also go on to cite 204.303B to make the point that while acknowledging Tim no longer was residing in China, Tim was residing in the United States at the time he was adopted. So there were some ties developed in the United States. Those ties were not enough for Tim to establish habitual residence given the circumstances that led to those ties which show those ties were developed in furtherance of his adoption and or immigration to the United States. And so, Your Honor, I see my... Well, I've got a... Let me ask you a question. Yes. A little different question. When I look at... When we look at the decision of the Board of Immigration Appeals and now we're reviewing it, what's the standard of review that we ought to apply? So, Your Honor, this court would review the grant of summary judgment from below de novo, but it would apply the same standard applied by the lower court under the APA, which is that this court would apply deference to the BIA's decision or would review it under the deferential standard of review. Well, but how do we review the findings of fact that the BIA relied upon? So that would be a narrow standard of review under the APA. That would be the deferential standard of review under the APA. Well, but don't we have... What I'm getting at, don't we have to know what facts the Board of Immigration Appeals found or relied upon in making its decision? Yes, so... Otherwise, the Board could... You know, there could be some extraneous information that was submitted to the Board improperly and it relied on that. Right, Your Honor. We should know what the facts are that the Board was relying upon? Yes, Your Honor. Under the APA, the Board is... The review is confined to the record of the case that was before the BIA and that record was also filed before this court and that was the same record that was before USCIS. Sure. But here, as I read it, other than reference to... a reference to... just kind of this vague reference of how this young person came to be enrolled in school, I don't see any facts that are set forth in this decision. It says, considering the specific facts and circumstances, well, what facts and circumstances? How do we know whether that... whether the Board properly evaluated those facts? Right. Well, Your Honor, the facts in this case are quite limited. As I mentioned, Tim arrived here in August of 2011. He was adopted by September of 2012. Sure. But where is that... I'm asking, where is that in this decision from the Board of Immigration Appeals? Well, the BIA does not mention the specific facts. See, that's the question. The question is, there are no specific fact findings here. And it's not a case where there's an IJ hearing somewhere else that you've got a record developed that we can look at and say, well, the BIA had before what the immigration judge found. I mean, this is a case where all they told us is, considering all the facts, and then, well, you know, really, if you're the finder of fact, the burden usually rests on you as a trial judge, a hearing officer, the BIA, anybody that finds facts, unless you're a jury, you have to actually sit down and write, these are the facts that I find and this is what I'm relying on. And the only facts that are in here are the ties to the United States facts. And they are, in like that page, I guess it's 2-04, or whatever it is in the record, but they're in the single paragraph on page 2 that starts with, the beneficiary arrived on August 2, 11, and was adopted on September 12. So we know those two facts. He got here in August and was adopted 13 months later. And then we've got, that during that year, he attended school, he was involved in activities, he participated in religious activities, and so that's it. And is that the whole universe of facts that's out there? And that's the basis for, those are sufficient fact findings, in your opinion, to sustain the conclusion. Yes, Your Honor. The government's position is that the BIA makes its point by mentioning those facts and then going on to cite to the regulation that states that a child will not be habitually resident where he travels to in conjunction with his adoption and or immigration. All of the facts that are mentioned here, the fact that he arrived in the United States, was adopted shortly after, developed some ties in that time, speak to the fact that he was brought here for the purposes of immigration and his adoption was done to further that. I get that that's what the briefs tell me. What I'm trying to figure out is where in this order does it say the child was habitually resident in China. In 2011, the child was brought to the United States. That the child was brought to the United States for purposes of adoption and or immigration. That immigration proceedings were pending. That during the period of time that those were pending, he was enrolled in school, attended religious services, and was involved in extracurricular activities. If you look at how finance factors are usually laid out, that's kind of how we do it in this business. Are we being asked to divine too much? Or is all of that sufficiently set forth in this two page and then the orders goes on to the third page where it just says it is so ordered, right? As I read it. Is that enough? Yes, your honor. The government's position is that is enough because again the BIA's mentioning of those facts and citation to the regulation makes that point. The BIA mentions earlier that the question is whether the child was actually resident in the United States. So we know that we're looking at the second element here. The second element of the USCIS policy memo. And again, there is a limited set of facts in this case. The facts show that Tim was adopted within a year of arriving here. And soon after his adoption, when his parents arrived, he moved back in to live with his parents. And so, when Mishab moved out of Dallas to pursue nursing school elsewhere. So there are a limited set of facts. That statement is not in the order? Yes, your honor. It is not in the order, but it is in the record. And again, the BIA is not required to every fact that it did rely upon in making its decision. And the lower court did find that the facts... But we have to have a pretty good idea of what the board was considering? Well, let me ask you this. And I just want to make sure... And then I will stop. I just want to make sure what you're staking this on. Is it your position that if we look at page two of the board's decision, in the second full paragraph, the first two sentences have a description of events. Those two sentences, in your view, is sufficient to support the decision of the board? The content of those two sentences? Yes, your honor. Those two sentences, the sentence that provides the analysis in the combination of the... Now, the sentences that say the beneficiary arrived in August of 2011, petitioner adopted him in September 2012, beneficiary attended school in this country, participated in religious and other extracurricular activities, and resided with the petitioner, period. Those are the fact findings that this board decision is based upon. Yes, your honor. Okay. So the universe says, prior to 2011, the child was habitually resident and China was a citizen of China. Then in August of 2011, the child moved to the United States and that that was in anticipation of immigration or adoption. Right? And that he was then enrolled in school and then we get to the facts that were just recited by Judge Shepard. And that's the universe of facts that we have here. Is that true? Yes, your honor. Okay. And with that universe of facts, we concede that that is a limited universe of facts, but those are really all the facts that are ever going to be found. If we send it back to task for more, they're just going to write those things out in bullet points and tell us that and there really is nothing else to be developed in this record. Your honor, I can't say for sure how the BIA would write this decision differently. I do think, I think that the BIA makes its point here, but if this court finds that the BIA should expand on its analysis, I can't answer how it would do so. Yeah, that's profoundly unfair. I get it. I do that though. Well, I just have to ask, it seems that I read in the material in preparing for argument today some information that the family lived in China. They developed this plan to come to the United States. They visited the United States occasionally and so they sent him ahead so that he could get acclimated to the country and I could go on and on and none of that is in the BIA decision. Yes, your honor. Is that information perhaps helpful or relevant? Right. Your honor, that is true. It's not in the decision, but the BIA's decision under the APO must merely be reasonable and discernible based on the record and so where the BIA does mention that the facts and circumstances that led to Tim developing the ties he did, which as you mentioned, the facts of his family planning to come here and sending him ahead so he could enroll in school ahead of time, those are the facts that the BIA refers to when it mentions the facts and circumstances that led to his enrollment in school and again, the important language from the regulation that states a child will not be considered habitually resident where he travels for his immigration and or adoption, it is in the BIA's order and the big picture is that this child was brought for the purposes of immigrating here and his adoption was done to further that immigration. That much is clear from the record and so the ties that he developed in that time where he was immigrating and then being adopted are reasonably called into question and that is based on the language of the regulation and your honors, I have run out of time but I would like to take a step back and remind this court that the United States is a party to the International Hague Adoption Convention and it does have a duty to ensure that the requirements of that convention are upheld and so for that reason, the BIA properly decided that Ms. Zhao should have followed the requirements of that convention when adopting her nephew from China and if you don't have any other questions, your honors, that is all I have. Thank you. Thank you. You may stand aside and we'll hear from the appellant. Thank you, your honors. The first is on the lack of factual development. There's a couple factors that make it especially egregious here. One is that the board exercised de novo review over the facts so that makes it unlike the typical decision from an immigration judge where the review is for clear error so there was a special obligation here and the parties agreed that whatever the proper habitual residence standard is, it is a very fact-intensive inquiry and in terms of the government's attempt to kind of boil this down to, oh, well, he was adopted just for immigration purposes, I just point the court to pages 11 to 16 of the opening brief where we discuss everything that led up to the adoption. It wasn't just about immigration. Tim had a children relationship with his birth parents. He was thriving under the plaintiff's care in a way that he never was with his birth parents. The plaintiff also adopted a cousin of his that was very close to him when he was growing up so there's a lot more in the record than just this was about immigration. And on that point, if that really was the agency's motivation, if it believed that this adoption was a sham adoption that was solely for immigration purposes, it didn't need to invoke the Hague Adoption Convention for that. There's a board decision in the matter of Marquez that we cite in our opening brief that basically analogizes sham adoptions to sham marriages and it would prohibit a sham adoption just for immigration purposes. That's not what the agency found in this case. If that was really the basis for the agency's decision, it should have relied on the matter of Marquez and cited all of the specific facts that made it believe it was a sham adoption. It didn't do that. That would be a very different case than the case before this Court. And the last point I'd like to make is just to address your question, Judge Arnold, about the regulation at the top of the decision, the 204.2d reg. It's a pretty awkwardly written regulation and it can't possibly prohibit all adoptions in the United States. Even the government has recognized that even though a child may have habitually resided before entering the U.S., at a certain point, that child becomes habitually resident in the U.S. And the agency's own memo recognizes that fact by acknowledging that if a child habitually resides in the U.S. at the time of the adoption, then ultimately the traditional visa process and not the HIC adoption process would govern. Unless the Court has further questions? I've got one final question, I think. You know, in the immigration appeals that we hear on a routine basis, there is a, I guess most of the time, there's a hearing before an immigration judge and there's a transcript of that hearing. Right. But that's not the case in this type of proceeding. That's correct, Your Honor. It's all in the paper record. And I see that references to these requests for evidence Correct. being issued by the director and then there's response. That's correct. Is that how the actual record is developed? That's right, Your Honor. It's all on the papers. It's adjudicated in the first instance by USCIS and then the appeal goes outside of DHS, which is within DHS, and then the appeal goes to the Board of Immigration Appeals, which is a separate agency under the Department of Justice. So I wonder, does that fact that it is a different procedural development process, do you think that that might lend some support to the contention that we can, when the Board uses this phrase, considering the specific facts and circumstances, do you think that that permits us just to look at the record that the Board looked at and decide if we agree? No, I don't think so. I'm sorry. I don't think so, Your Honor. The Board still has an obligation to offer an explanation that's sufficient to enable meaningful judicial review. And I think it would be different, you know, if the Board had expressly adopted the findings of the agency. In fact, those findings are not particularly developed here either. But it didn't do that. It simply said we affirm the director's decision And then on the last page it says that the director properly denied the petition. But we don't know whether it did so for grounds that were different than USCIS, just as this Court might affirm a district court for reasons other than the district court issued in the first instance. Thank you, Your Honors. Okay. Thank you. All right. Thank you, Counsel. I appreciate your arguments. The case has been well argued. We appreciate your answers to our questions. And it's an important case. And the Court will consider it submitted. And we will render a decision as soon as possible.